# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAUREN FREDRICKSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| **IQ DATA INTERNATIONAL, INC,** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES the Plaintiff, Lauren Fredrickson, by and through undersigned counsel, and for her complaint against the Defendant, IQ Data International, Inc., Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692 et seq., and pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district in that Plaintiff resides here, Defendant transacts business here and the conduct complained of occurred here.

### III. PARTIES

4. Lauren Fredrickson ("Plaintiff") is a natural person who resides in Kansas City, Kansas.

5. Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).

6. IQ Data International, Inc. ("IQ Data") is a business entity engaged in the collection of consumer debt within the State of Kansas.

7. IQ Data is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

## IV.  ALLEGATIONS

8. The debt allegedly owed by Plaintiff was incurred primarily for personal, family, or household services and is therefore a "debt" as that term is defined by the FDCPA, 15. U.S.C. § 1692a(5).

9. On June 28, 2019, Plaintiff began residing in an apartment with a friend and signed a lease agreement to rent an apartment from Staley Crossing.

10. Unfortunately, shortly after moving in, Plaintiff was unable to continue residing at the apartment complex.

11. In July 2019, Plaintiff located a new apartment and began discussing early termination of her lease with Staley Crossing management.

12. However, on August 19, 2019, Staley Crossing, proceeded to file an eviction lawsuit in the District Court of Clay County, Missouri seeking payment of all monies due and possession of the premises.  Plaintiff was never personally served, nor did she have knowledge of the pending suit.  Service of process was effectuated by posting a notice on the apartment door.  In accordance with Chapter 535 of the Revised Statutes of Missouri, posting is effectual service for possession, but not financial damages.  In pertinent part:

**Title XXXVI STATUTORY ACTIONS AND TORTS**

Chapter 535

\<  \> • **Effective - 28 Aug 2018, 4 histories** 

**535.030. Service of summons — court date included in summons. —** 1. Such summons shall be served as in other civil cases at least four days before the court date in the summons. The summons shall include a court date which shall not be more than twenty-one business days from the date the summons is issued unless at the time of filing the affidavit the plaintiff or plaintiff's attorney consents in writing to a later date.

2. In addition to attempted personal service, the plaintiff may request, and thereupon the clerk of the court shall make an order directing that the officer, or other person empowered to execute the summons, shall also serve the same by securely affixing a copy of such summons and the complaint in a conspicuous place on the dwelling of the premises in question at least ten days before the court date in such summons, and by also mailing a copy of the summons and complaint to the defendant at the defendant's last known address by ordinary mail at least ten days before the court date. If the officer, or other person empowered to execute the summons, shall return that the defendant is not found, or that the defendant has absconded or vacated his or her usual place of abode in this state, and if proof be made by affidavit of the posting and of the mailing of a copy of the summons and complaint, the judge shall at the request of the plaintiff proceed to hear the case as if there had been personal service, and judgment shall be rendered and proceedings had as in other cases, _**except that no money judgment shall be granted the plaintiff where the defendant is in default and service is by the posting and mailing procedure set forth in this section.**_ **(Emphasis added)**

13. On or about September 11, 2019, the court entered a default judgment in favor of Staley Crossing and against Plaintiff and her roommate, Dalton Rader. The judgment included an award of interest to accrue at nine percent annually.

14. On or about September 24, 2019, not even two weeks after judgment had been granted, a "Satisfaction of Judgment" was filed by Staley Crossing. It is attached as exhibit A.

15. In March 2021, in anticipation of purchasing a home, Plaintiff reviewed her credit report. She was shocked to discover that IQ Data listed a collection account on her credit report associated with a Staley Crossing debt. As she had never been served with any lawsuit, never received any collection letters or phone calls, and never heard anything from Staley Crossing since she moved out, she was sure that

this was incorrect. Review of her credit report listed a balance due to Staley Crossing in the amount of $10,533.81. This total amount far exceeded the judgment amount, even taking the interest rate into account. Further, it misrepresented the principal balance of the judgment and therefore, the accrued interest. Further yet, it misrepresented that any balance was due at all as the Satisfaction of Judgment had been filed and a money judgment would be improper under Missouri law.

16. Plaintiff was shocked that this collection agency would so blatantly misrepresent the information and list something on her credit report that she did not owe.

17. In an effort to understand what was going on, Plaintiff sent IQ Data a letter seeking validation of the alleged debt.

18. Eventually, Plaintiff realized she had no choice but to seek a resolution of the alleged inflated debt because the bogus civil judgment was preventing her from obtaining mortgage financing.

19. To that end, in January 2021 Plaintiff contacted the original attorneys for Staley Crossing in hopes of clearing the issue up.

20. However, IQ Data has refused to remove the collection account from Plaintiff's credit reports.

21. Plaintiff has disputed the inaccurate reporting directly with IQ Data and with the consumer reporting agencies but IQ refuses to remove the account or acknowledge the Satisfaction of Judgment.

22. As a result, IQ Data violated multiple provisions of the FDCPA, including but not limited to the following:

    a.   15 U.S.C. § 1692e, in that IQ Data made false, deceptive or misleading representations in connection with an attempt to collect a debt;

    b.   15 U.S.C. § 1692e(2), in that IQ Data misrepresented the character, amount, or status of a debt.

    c.   15 U.S.C. § 1692e(8), in that IQ Data reported inaccurate credit information regarding a debt.

## VI.  PRAYER FOR RELIEF

WHEREFORE Plaintiff Lauren Fredrickson respectfully prays for judgment in her favor and against IQ Data as follows:

    a.   All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1) from IQ Data and for Plaintiff;

    b.   Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) from IQ Data and for Plaintiff;

    c.   Plaintiff's attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from IQ Data and for Plaintiff;

    d.   Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,

**By: /s/ Thomas A. Addleman**
Tom Addleman KS 21104
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 140
Lee's Summit, MO  64064
Telephone:  816-246-7800
Facsimile:   855-523-6884
toma@creditlawcenter.com
Attorney for Plaintiff